DECISION.
{¶ 1} Defendant-appellee David Freeland and his company, Sportcell, Inc., conducted business with plaintiff-appellant Vulcan Corporation. Two documents were drafted and signed to clarify the business arrangement. The sole issue before us is whether the documents bound Freeland personally or bound only his corporation. We hold that Freeland was personally bound and so reverse the trial court's judgment.
 I. Shockfoam {¶ 2} Vulcan Corporation makes rubber and foam products used in shoes. It is based in Cincinnati, but its production plant is in Clarksville, Tennessee.
 {¶ 3} In 1994, Vulcan president and CEO Benjamin Gettler met with Freeland, who had developed a product called "shockfoam." Freeland had been in the business of production and design of foam products for about 27 years, using the name Sportcell, Inc. Sportcell was owned by Freeland, and Freeland was its only employee.
 {¶ 4} Gettler was impressed with Freeland's creativeness and wanted Freeland to work with Vulcan on shockfoam and other products. After the meeting, Freeland began working with Vulcan daily.
 {¶ 5} By early 1995, Gettler wanted to formalize the working relationship with a written agreement. On May 3, 1995, two documents were signed. The first was titled "Agreement." The second document, a letter, stated that its purpose was to "clarify and set forth our agreement" about costs, dates, and other "related matters" of the agreement.
 {¶ 6} For various reasons, the expected sales and profits from the collaboration did not materialize. By June 1996, Gettler sent Freeland a letter claiming that Freeland owed Vulcan $60,578.61. When Freeland refused to pay, Vulcan sued Freeland as an individual, claiming that Freeland had violated their agreement.
 {¶ 7} The trial court held a bench trial. In its decision, the court concluded that the two documents at issue were ambiguous about exactly who the parties were. Thus, the trial court considered evidence beyond the four corners of the contract to determine whether Freeland was personally bound by the writings. Based on trial testimony about the parties' intent to hold Freeland individually liable and strictly construing the contract against the drafter, Vulcan, the trial court decided that Vulcan had failed to prove that Freeland owed it any money.
 II. Individual Liability {¶ 8} In its single assignment of error, Vulcan argues that the trial court erred when it determined that Freeland was not individually liable under the contract. Vulcan is correct.
 {¶ 9} In another case released today by this court, The BigH, Inc. v. Watson,[1] we considered this same issue — when does a signature by a corporate officer obligate the officer as an individual. In The Big H, we outlined the general rules governing the issue.
 {¶ 10} A corporate officer is responsible for clearly identifying the corporation for which the officer is signing. An officer who fails to do so is exposed to individual liability. A corporate officer cannot simply provide his or her official title — the document must also include the corporate name. The typical format to avoid individual liability is, as set out by the Ohio Supreme Court in 1905, "company name, individual's signature, individual's position."[2] To that, we would suggest adding a "by" before the officer's name.
 {¶ 11} A corporate officer who signs a contract in a way that indicates personal liability is personally liable, regardless of his or her intent.[3] Further, under the parol-evidence rule, if a contract is unambiguous, a court should not use extrinsic evidence to interpret the contract.[4] But if the contract is ambiguous, then a court must look to the parties' intent.[5]
 III. Signatures {¶ 12} In this case, there were three signatures at the end of each document. On the first document, "Vulcan Corporation" was printed. Underneath was printed "By," and Gettler signed his name. The next line had "David Freeland" printed below it, and Freeland signed his name on the line. Below that, "Sportcell," was printed. Underneath, "By" was printed, and Freeland again signed his name.
 {¶ 13} In the second document, the signatures were similar, with Freeland again signing twice, once on a line above his own name and once again after the "By" below "Sportcell."
 {¶ 14} The first document contained no corporate title for Freeland. Freeland simply signed his name on two separate lines, with the document designating them for "David Freeland" and "Sportcell." But on the second document, the line for the Sportcell signature had printed below it "David Freeland, President."
 {¶ 15} Freeland's signing the documents two times indicated that he was signing in two different capacities. Freeland signed once for Sportcell, Inc., and then once for himself as an individual. This is basic agency law. The individual signature contained no identification of the corporate entity and no corporate title for Freeland. Thus, as in The Big H, the corporate officer's failure to clearly identify the corporation caused the officer to be personally bound under the contract.
 {¶ 16} These facts are the same as those in Spicer v.James.[6] In Spicer, two corporate officers each signed a lease twice, once as corporate officers and once as individuals. The court concluded that the officers' signatures bound not only the corporation, but also the officers as individuals.[7] The court noted, similar to the present case, that there was no language preceding the individual signatures that showed that they were signing "on behalf of" or "per" the corporation.[8]
 IV. Ambiguity {¶ 17} The trial court concluded that the contract — consisting of the two written documents — was ambiguous as to who the parties to the contract were. We do not read the contract as ambiguous — it clearly binds both Freeland and the corporation. But even if the contract were ambiguous, that would make no difference in the outcome of this case.
 {¶ 18} In general, as the trial court noted, "the strict logic of the nomenclature established in the first contract was cavalierly disregarded in both contracts." We agree that the documents were poorly drafted. But that alone did not make them ambiguous.
 {¶ 19} Yet even if there were some ambiguity as to who was bound by what promises in the contract, the parties' intent would compel the same conclusion — that Freeland was personally bound under the contract.
 {¶ 20} Gettler testified that the contract had been intended to be a three-party agreement, obligating Vulcan, Sportcell, and Freeland individually. Gettler further stated that, in the meeting where the documents were signed, he told Freeland that Vulcan would proceed with the business arrangement only if Freeland was personally responsible for money owed to Vulcan.
 {¶ 21} During Freeland's testimony, he was asked to describe the context in which the two documents had been presented to him to review and sign. Freeland responded, "I just signed them. I didn't even bother reading them." Freeland later testified, "In fact, there was a comment by one of the participants that said aren't you going to read them. I said it doesn't make any difference, I'm done."
 {¶ 22} Most damning was the testimony of Edward Ritter, the vice president and general manager of Vulcan's Clarksville facility. Ritter testified that he had been at the meeting where the documents were signed and that he told Freeland that he was obligating himself personally under the contract. Ritter testified, "At one point, Mr. Gettler left the room, and I did turn to Dave. I said, Dave, are you sure? You understand you are signing this personally as well as your company. * * * I also told him that, you know, you can take this to a lawyer. But, no, Dave was fine. I just want to get it over with, was basically his words."
 V. Freeland Bound {¶ 23} We conclude that (1) the contract was unambiguous and Freeland was personally laible under it, and (2) even if it were ambiguous, both Vulcan and Freeland intended for Freeland to be personally bound. Therefore, Freeland was personally liable for any breach of the contract. Accordingly, we sustain the assignment of error, reverse the trial court's judgment, and remand the case to the trial court for further proceedings.
 {¶ 24} Because the trial court did not find that Freeland was personally liable under the contract, it did not rule on the merits of whether Freeland actually owed Vulcan any money. There are significant testimony and numerous exhibits in the record about this issue, and we leave it to the trial court on remand to determine what Freeland owes Vulcan.
Judgment reversed and cause remanded.
Gorman, P.J., and Sundermann, J., concur.
[1] 1st Dist. No. C-050424, 2006-Ohio-___.
[2] See id., citing Aungst v. Cheque (1905), 72 Ohio St. 551,553-554, 74 N.E. 1073; Bank v. Cook (1882), 38 Ohio St. 442,444.
[3] See Spicer v. James (1985), 21 Ohio App.3d 222, 223,487 N.E.2d 353.
[4] See Gray Printing Co. v. Blushing Brides, LLC, 10th Dist. No. 05AP-646, 2006-Ohio-1656, at ¶ 27; Busler v. D H Mfg.,Inc. (1992), 81 Ohio App.3d 385, 390, 611 N.E.2d 352.
[5] See Spicer v. James, supra; Shivolocki v. East Ohio GasCo. (1974), 38 Ohio St.2d 244, 313 N.E.2d 374, paragraph one of the syllabus.
[6] See Spicer v. James, supra.
[7] Id. at 223.
[8] Id.