[Cite as *Vandemark v. Reder*, 2026-Ohio-50.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| GREG VANDEMARK, | : | APPEAL NO. C-250029 |
| and | : | TRIAL NO. 24CV20189 |
| PATRICK HANLEY, | : | |
| Plaintiffs-Appellants, | : | *JUDGMENT ENTRY* |
| vs. | : | |
| MARK REDER, | : | |
| and | : | |
| MARK PICARD, | : | |
| Defendants-Appellees, | : | |
| and | : | |
| SHELDON REDER CPA's INC, | : | |
| Defendant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed 25% to Appellants and 75% to Appellees.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

## OHIO FIRST DISTRICT COURT OF APPEALS

**To the clerk:**

**Enter upon the journal of the court on 1/9/2026 per order of the court.**


**By:**_____
                **Administrative Judge**

[Cite as *Vandemark v. Reder*, 2026-Ohio-50.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

GREG VANDEMARK,                    :      APPEAL NO. C-250029
                                          TRIAL NO.  24CV20189
   and                         :

PATRICK HANLEY,                    :

   Plaintiffs-Appellants,      :          *O P I N I O N*

vs.                               :

MARK REDER,                        :

   and                         :

MARK PICARD,                       :

   Defendants-Appellees,       :

   and                         :

SHELDON REDER CPA's INC,           :

   Defendant.                  :


Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: January 9, 2026


*Ty L. Foster*, for Plaintiffs-Appellants,

*Goering & Goering, LLC, Eric W. Goering, Robbins, Kelly, Patterson & Tucker, LPA,* and *Michael A. Galasso*, for Defendant-Appellee Mark Reder,

*Cohen, Todd, Kite & Stanford, LLC, Jesse E. Knowlden* and *John L. O'Shea*, for Defendant-Appellee Mark Picard.

**CROUSE, Judge.**

{¶1}     Plaintiffs-appellants Greg Vandemark and Patrick Hanley (collectively, "Appellants") allege that they entered into a contract with defendants-appellees Mark Reder and Mark Picard (collectively, "Appellees"), as well as defendant Sheldon Reder CPAs, Inc. ("SRC"). Under that contract, Appellants tendered a $5,000 retainer fee to pay for future accounting services that neither Appellees nor SRC ever provided. Unable to secure the return of their retainer, Appellants sued, asserting four theories of recovery. Appellees moved to dismiss, arguing that Appellants' contract was not with them, but with SRC itself. The trial court agreed and dismissed the case. Appellants filed this timely appeal.

{¶2}     As we explain in greater detail below, we agree that Appellants could not recover against Appellees for breach of contract on the facts alleged in the complaint, because Appellants' contract was with SRC. We therefore affirm the trial court's dismissal of that claim. However, because Appellants adequately alleged that, notwithstanding the contract, Appellees were liable for unjust enrichment, fraud, and civil theft, we reverse the trial court's dismissal of those claims and remand the cause for further proceedings.

## I.  BACKGROUND

{¶3}     Appellants initiated this litigation by filing a complaint against Appellees and SRC in the Hamilton County Municipal Court. SRC is not a party to this appeal. The core factual allegations in the complaint were as follows:

> 3.     Defendants Mark Reder and Mark Picard were owners, employees and/or members of Defendant Sheldon Reder CPA's Inc. at all relevant times.
>
> 4.     On or about August 13, 2018, Defendants Mark Reder,

Mark Picard and Sheldon Reder CPA's, Inc., entered into a contract to perform professional accounting and tax services for Plaintiffs . . . .

5.     In reliance on this contract, Plaintiffs advanced the sum of $5,000.00 to defendants.

6.     Defendants failed to perform any services, failed to provide any invoicing for services and have failed and refused to return the monies advanced by Plaintiffs.

The complaint incorporated by attachment a copy of a letter of engagement dated August 13, 2018, and an invoice dated August 30, 2013.

{¶4}     Based upon these facts, and with a handful of further allegations under each heading, Appellants' complaint alleged that Appellees were liable for (1) breach of contract, (2) unjust enrichment, (3) fraud, and (4) civil theft under R.C. 2307.60.

{¶5}     Picard then filed a motion to dismiss pursuant to Civ.R. 12(B)(6), along with an affidavit in which he averred that he had been a mere "salaried W-2 employee" of SRC; that he had "never exercised any control, whether . . . financial or managerial, over" the firm; and that he was neither the "registered agent" nor "an owner, officer, director, or shareholder" of SRC. Appellants responded to this motion and submitted an affidavit in which Vandemark averred certain facts regarding his relationship and business with Appellees.

{¶6}     Reder filed a separate motion to dismiss, to which Appellants never responded.

{¶7}     Two months later, the trial court granted both motions to dismiss. Appellants then voluntarily dismissed their claims against SRC and filed their notice of this appeal.

5

## II. ANALYSIS

{¶8}    In their sole assignment of error, Appellants argue that the trial court erred by dismissing their claims against Appellees under Civ.R. 12(B)(6). Before evaluating each of Appellants' four theories of recovery, we address the relevant pleading and review standards.

### A. Standards

{¶9}    Civ.R. 12(B)(6) allows a defendant, before filing their answer, to assert that a plaintiff's complaint "[f]ail[s] to state a claim upon which relief can be granted." Civ.R. 12(B)(6) is procedural in character, intended to test "the sufficiency of the complaint and the materials incorporated into it." *State ex rel. Ames v. Baker, Dublikar, Beck, Wiley & Mathews*, 2022-Ohio-3990, ¶ 16, citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 1992-Ohio-73, ¶ 9.

{¶10}    A complaint's sufficiency is measured against Civ.R. 8(A), which requires any pleading that sets forth a claim for relief to "contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Ohio courts have construed these requirements to impose a "notice-pleading" regime. *See Maternal Grandmother v. Hamilton Cty. Dept. of Job & Family Servs.*, 2021-Ohio-4096, ¶ 10. "The purpose of notice pleading is clear: to simplify pleadings to a short and plain statement of the claim and to simplify statements of the relief demanded, to the end that the adverse party will receive fair notice of the claim and an opportunity to prepare his response thereto." (Cleaned up.) *Wells Fargo Bank, N.A. v. Horn*, 2015-Ohio-1484, ¶ 13. Because notice is the goal, Ohio courts do not require a plaintiff "to prove his or her case at the pleading stage," and will not dismiss a complaint "as long as there is a set of facts, consistent with the plaintiff's complaint, which would

6

allow the plaintiff to recover." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991).

**{¶11}** Fraud is an exception to this lenient notice-pleading standard. Civ.R. 9(B) requires a pleader to allege "circumstances constituting fraud . . . with particularity," although "[m]alice, intent, knowledge, and other condition of mind" may still "be averred generally." *See also Volbers-Klarich v. Middletown Mgmt., Inc.*, 2010-Ohio-2057, ¶ 27, 30.

**{¶12}** We review dismissals under Civ.R. 12(B)(6) de novo. *Plush v. City of Cincinnati*, 2020-Ohio-6713, ¶ 12 (1st Dist.); *State ex rel. Peoples v. Schneider*, 2020-Ohio-1071, ¶ 6.

### B. Breach of Contract

**{¶13}** Appellants' first cause of action asserts that Appellants, Appellees, and SRC "entered into a contract," and that Appellees and SRC "breached this contract in a material way by failing to perform services, failing to provide an accounting for the retainer money advanced, and failing to return the retainer monies." Because SRC has been dismissed from the action, the question before us concerns only Appellees' individual liability on the contract.

**{¶14}** In general, when a party enters into a contract with a corporation, liability for breach of that contract will not extend to the corporation's shareholders, officers, directors, or agents. *See Dombroski v. WellPoint, Inc.*, 2008-Ohio-4827, ¶ 16. However, Appellants argue that two exceptions to this general rule apply here. First, Appellants contend that Appellees did not clearly manifest their intent to bind only SRC, their corporate principal (and not themselves), and that Appellees can therefore be held individually liable for the contract's breach. Second, Appellants argue that, even assuming Appellees were not parties, Appellants may yet be entitled to disregard

corporate separateness and hold Appellees individually liable for the corporation's debts. We conclude that the complaint before us fails to state a claim against Appellees under either theory.

*1. Appellees' Liability as Parties to the Contract*

**{¶15}** Whether Appellees were parties to the agreement turns on whether the parties intended to bind Appellees as individuals, or merely to bind SRC as a company. "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11. But if a court determines that the parties intended to reduce their agreement to a writing and that the terms of that writing are unambiguous as a matter of law, then the court will "look no further than the writing itself to determine the parties' intent." *Neuro-Communication Servs., Inc. v. Cincinnati Ins. Co.*, 2022-Ohio-4379, ¶ 13, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978). Contractual terms are unambiguous "[a]s a matter of law" when, based on the document alone, those terms "can be given a definite legal meaning." *Galatis* at ¶ 11. When contractual language proves ambiguous, questions of intent—which are essentially factual in character—are left to the finder of fact. *See Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 2024-Ohio-1945, ¶ 12.

**{¶16}** Principles of agency law supply special rules of interpretation and construction where, as here, one party claims to have signed the agreement as an agent or officer of a corporation. In such cases, a court must determine whether the parties intended to subject (A) the corporation, (B) the individual signer, or (C) both to potential liability under the contract. Generally, an individual who signs as an agent or officer of a corporation is responsible for clarifying the capacity in which she signed by adding the name of her principal or corporation to her own. *See Big H, Inc. v.*

*Watson*, 2006-Ohio-4031, ¶ 7 (1st Dist.). Absent such an indication, she may be held individually liable on the promises in the contract. *Id.*

{¶17} We have said that "the typical format to avoid individual liability is 'company name, individual's signature, individual's position.'" *Id.*, quoting *Aungst v. Creque*, 72 Ohio St. 551, 553-554 (1905). "To that, we would suggest adding a 'by' before the officer's name," to obviate any lingering ambiguity regarding the agency relation. *Vulcan Corp. v. Freeland*, 2006-Ohio-4033, ¶ 10 (1st Dist.). Under these principles, this court has held a party individually liable on a contract he signed above the letters "V.P.," because the name of the corporation "appear[ed] nowhere in the contract." *Big H* at ¶ 9. In that case, we noted that, "[e]ven on the signature line," the individual had failed to "identify[] any corporate entity." *Id.* The mere indication that the signer was "V.P." of *something* was not enough; the signer "needed to identify that he was signing for the corporation by writing the corporate name and then signing his name along with his title." *Id.* at ¶ 10.

{¶18} These signature requirements function as safe harbors, in which a court will presume that the parties' intent to bind the principal was clear. They are sufficient, but not always necessary conditions. In situations that fall outside of this safe harbor, we must consider both "the form of the promise and the form of the signature" in ascertaining whether an agent met their burden to indicate a clear intent to bind only their principal. *See Spicer v. James*, 21 Ohio App.3d 222, 223 (2d Dist. 1985).

{¶19} In some cases, too, a signer may unambiguously manifest an intent to bind *both* their principal *and* themselves. For example, this court's decision in *Vulcan*, and the Second District's decision in *Spicer*, both concerned agents or corporate officers who signed a contract twice—once *without* a designation of their corporate role or indication that they signed "per" or "on behalf of" a principal, and once *with*

such a designation. *Vulcan* at ¶ 12-14; *Spicer* at 223. In *Vulcan*, we held that, as a matter of "basic agency law," the signer's second signature indicated his intent to bind the corporation, while the first bound the signer himself. *Vulcan* at ¶ 15. The Second District reached the same conclusion in *Spicer*—even though the body of the lease agreement in that case had referred "solely to" the corporation as tenant and had contained no reference to the individual. *Spicer* at 223. In both cases, the signers were bound to answer under the contract and could be held individually liable for its breach. *Id.*; *Vulcan* at ¶ 23.

{¶20} In the case at bar, Appellants incorporated a copy of a letter of engagement into their complaint by attachment and reference. *See* Civ.R. 10(C) and (D)(1); *see also Peoples*, 2020-Ohio-1071, at ¶ 9; *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.*, 1995-Ohio-251, ¶ 11. They alleged that this letter represented the parties' contract. For purposes of Civ.R. 12(B)(6), we accept this letter as a true and accurate memorandum of the parties' agreement.

{¶21} Although the letter of engagement contains no handwritten signature,[1] its signature block otherwise indicates Appellees' intent to bind only SRC, their corporate principal. Beneath the space where a signature would go are two lines of text reading, "Mark Picard & Mark Reder, CPA," and beneath it, "Sheldon Reder CPAs." Apart from the missing signature itself, this signature block meets the requirements of *Big H*, 2006-Ohio-4031, at ¶ 7 (1st Dist.). It includes the name ("Mark Picard & Mark Reder"), title ("CPA"), and corporation ("Sheldon Reder CPAs") of any would-be signer. Further, no space was set aside for a second set of signatures without corporate

---

[1] We note that Appellees have not argued, and the trial court did not hold, that this lack of a handwritten signature bears on the enforceability of the contract. We therefore do not address that issue.

title or designation, so that, unlike in *Spicer* or *Vulcan*, there was no indication of an intent to create joint corporate-individual liability. *See Spicer*, 21 Ohio App.3d at 223; *Vulcan*, 2006-Ohio-4033, at ¶ 15, 23 (1st Dist.).

{¶22} Nevertheless, Appellants contend that the letter of engagement was "ambiguous as to who was engaged" because Appellees' signature block did not contain express language stating that either signed as an "'agent of corporation'" or "'manager.'" We agree that Appellees could have made their task (and ours) easier by including a designation of agency like those Appellants suggest. Or Appellees might have added a "by" before their names, as we suggested in *Vulcan*, or an "on behalf of" or "per" before the corporation's name, as described in *Spicer*. *See Vulcan* at ¶ 10; *Spicer* at 223. We reiterate our recommendation that agents employ such clear indicators to eliminate their risk of individual liability, if that is their intent.

{¶23} But a writing *can be* unambiguous even without such indicators—and this writing is. In addition to the signature block's standard corporate designations, the letter's body clearly identified who the contracting parties were:

> This letter is to confirm the understanding and agreement of Patrick J. Hanley, Attorney & Counselor at Law and Sheldon Reder CPAs with respect to the terms and conditions of our engagement and the nature and limitations of the services to be provided during 2018.

The body of the letter thereafter referred to the contracting parties as "we" and "you," meaning SRC and Hanley, respectively. Unlike the contract in *Big H*, the body of this agreement specified the corporation (SRC) as the contracting party and made no reference to the individual signers (Reder and Picard) outside of the signature block. *Compare Big H* at ¶ 9, 12. Further, the letter was on SRC's corporate letterhead, which bore the words "Sheldon•Reder" above "Certified Public Accountants, Inc.,"

11

demonstrating that "Sheldon Reder CPAs," as used in the contract's body, referred to corporate entity SRC, and not merely to the names of Messrs. Sheldon and Reder joined without punctuation.

{¶24} Given the letter's identification of SRC as the contracting party, the designation of SRC beneath Appellees' names in the signature block, and the lack of any second signature block without a corporate designation, we hold that the letter here unambiguously indicated the parties' intent to bind SRC, not Appellees individually, to perform under the contract. Appellees Reder and Picard were not parties to the contract; they cannot be held liable for its breach on that basis.

### 2. *Appellees' Liability for SRC's Debts*

{¶25} Appellants next contend that, even assuming that SRC was the only party on the other side of the contract, the complaint stated a claim for recovery against Appellees for SRC's debts.

{¶26} Foundational to the law of corporations is the precept that "shareholders, officers, and directors of a corporation are not generally liable for the debts of the corporation." *Dombroski*, 2008-Ohio-4827, at ¶ 16. Parts of this doctrine of corporate separateness have been enshrined in Ohio's Constitution. *See* Ohio Const., art. XIII, § 3.

{¶27} But "not generally liable" is not the same as "never liable." Equity will permit a plaintiff to "pierce the corporate veil" and impute a corporation's liabilities to its shareholders "when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control

and wrong." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 1993-Ohio-119, paragraph three of the syllabus.

**{¶28}** At the threshold, Appellee Picard argues that, even if the veil could be pierced, *he* could not be held liable for SRC's debts because he was merely an employee of SRC—not an owner, director, or shareholder. To substantiate this allegation, he urges the court to consider his affidavit or else to take judicial notice of corporate records on the Ohio Secretary of State's website.

**{¶29}** Picard's requests fundamentally misapprehend the limits of his Civ.R. 12(B)(6) motion. Where a Civ.R. 12(B)(6) motion "presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment," and the parties must be accorded a "reasonable opportunity to present all materials made pertinent to such a motion by Rule 56." Civ.R. 12(B). Below, the trial court expressly excluded consideration of Picard's affidavit and declined to take notice of the public records. It therefore did not afford Appellants the "meaningful opportunity to respond" with their own evidence that would be required under Civ.R. 56. *See Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), syllabus.

**{¶30}** This court must review the trial court's Civ.R. 12(B)(6) dismissal, and it is therefore limited, as the trial court was, to the face of the complaint. That complaint alleges that "Defendants Mark Reder and Mark Picard were owners, employees and/or members of Sheldon Reder CPA's Inc. at all relevant times." We accept this as true for purposes of the Civ.R. 12(B)(6) motion and disregard Picard's proffered, extra-complaint evidence.

**{¶31}** But even assuming that Appellees were "owners" of SRC, Appellants' complaint failed to establish a basis for holding them liable for SRC's debts. To survive

13

a defendant's motion to dismiss, the complaint must state a claim against that defendant. Here, Appellants' complaint alleged a cause of action for breach of contract against *SRC*, not Appellees—and to the extent Appellees were shareholders, officers, or directors of SRC, SRC's corporate form provided them with prima facie insulation from individual liability for SRC's debts.

{¶32} To recover, therefore, Appellants needed to plead a basis upon which the court could disregard the corporate form. But Appellants' allegations never asserted or demonstrated that Appellees exercised control over SRC that was "so complete that [SRC had] no separate mind, will, or existence of its own." *See Belvedere*, 1993-Ohio-119, at paragraph three of the syllabus. Appellants' complaint thus provided no basis for rebutting the presumption of SRC's corporate separateness, and so did not state a breach-of-contract claim upon which relief *against Appellees* could be granted.

{¶33} Appellants argue that the face of their complaint rendered at least Reder's control over the corporation obvious, because Reder's name appeared in the name of the firm, because Reder was the agent listed for service of process, and because Reder's name appeared on the signature page of the engagement letter. Thus, Appellants contend, "While a specific claim for 'lifting the corporate veil' was not asserted, an amendment after discovery depositions would be anticipated."

{¶34} But even assuming that the evidence ultimately shows that Reder's name appears in the firm's and that Reder served as SRC's agent (as it almost certainly will), this would not furnish a basis upon which a court could grant Appellants relief against Reder. Such involvement shows only that Reder did many of the things one might expect a joint owner of a small corporation to do. It did *not* compel the inference that Reder made the firm's will synonymous with his own.

14

{¶35} Nor can Appellants' complaint be saved by the possibility of amendment after discovery. Under our notice-pleading regime, a plaintiff may plead many of the facts underlying their claim with a significant degree of generality. But the parts of the complaint must still add up to a cause of action against the named defendants, or else the complaint may be dismissed. Here, Appellants' complaint failed to state a claim against Appellees for breach of the contract, because it contained no allegations—even general ones—that would supply a basis for Appellees' individual liability.

* * *

{¶36} We hold that, even assuming all the allegations in Appellants' complaint are true, Appellants have stated no breach-of-contract claim against Appellees—either as contracting parties or as owners of SRC—upon which relief could be granted. The trial court therefore did not err in dismissing Appellants' claim for breach of contract.

### C. Fraud

{¶37} Under their next cause of action, Appellants alleged that Appellees were liable for fraud. The elements of fraud are "(1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (3) intent to induce reliance on the representation; (4) justifiable reliance; and (5) injury proximately caused by the reliance." *Fannie Mae v. Hirschhaut*, 2019-Ohio-3636, ¶ 30 (1st Dist.); *accord Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 61. And while Civ.R. 9(B) requires fraud to be pled with particularity, that requirement is generally satisfied where the pleading states "the time, place, and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud." *Meehan v. Mardis*, 2019-Ohio-4075, ¶ 20 (1st Dist.);

*accord Volbers-Klarich*, 2010-Ohio-2057, at ¶ 30.

**{¶38}** The relevant portions of Appellants' complaint alleged as follows:

17. Defendants represented to Plaintiffs that they would perform services for Plaintiffs and that Defendants would hold the retainer money only for the purpose of billing hourly work.

18. Defendants' representations were material to the transaction.

19. Defendants made these representations knowing, or having reckless disregard for the fact, that they would not preserve these funds in a secure manner and knowing, or having reckless disregard for, the fact that they would not preserve these funds for billing purposes, but, rather, they would convert these funds for their own purposes.

20. Plaintiffs were justified in relying on the representations of the Defendants.

21. Defendants intended to mislead the Plaintiffs when they made these false representations.

22. Plaintiffs have suffered losses and damages as a result of the actions of the Defendants.

**{¶39}** Taken in concert with Appellants' core allegations, these allegations state a claim against Appellees for fraud. They allege the time of the promise made to Appellants by Appellees. They allege the contents of that promise: that Appellees would use the retainer fee to fund the provision of accounting services. They allege that, at the time Appellees promised this, Appellees "kn[ew], or ha[d] reckless disregard for, the fact that they . . . would convert these funds for their own purposes," and "intended to mislead" Appellants. And they allege that, as a result of and in

16

reliance on Appellees' false promises, Appellants paid $5,000 for services they would never receive. These allegations were sufficiently particularized to satisfy Civ.R. 9(B).

**{¶40}** But Appellees—and especially Appellee Reder—argue that Appellants' fraud claim must fail as a matter of law, because (1) the alleged misrepresentation concerned a future event, and (2) the existence of a contract precludes tort claims based on contractual breaches. Neither of these arguments justifies dismissing Appellants' fraud claim.

### 1. Future Events & Promissory Fraud

**{¶41}** Appellee Reder first argues that Appellants' fraud claim must fail because of the "general rule . . . that fraud cannot be predicated upon a representation concerning a future event." *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 742 (8th Dist. 1992); *accord Lucarell*, 2018-Ohio-15, at ¶ 63. But this general rule has well-established exceptions, including when "a promise [is] made with a present intention not to perform." *Link* at 742; *accord Ltd. Invest. Group Corp. v. Huntington Natl. Bank*, 2022-Ohio-3657, ¶ 76 (10th Dist.); *Kingston of Miamisburg v. Maute*, 2018-Ohio-2855, ¶ 19 (2d Dist.). A claim based on such an intentionally false promise differs in kind from a claim based on an erroneous prediction or subsequent decision not to perform, because the false promise involves "a misrepresentation of an *existing fact*—the speaker's present state of mind." (Emphasis added.) *Link* at 742. When such an intentional misrepresentation about present intent induces detrimental reliance, courts often describe the malfeasance as "promissory fraud." *See Ltd. Invest. Group* at ¶ 76; *Miamisburg* at ¶ 19. And when this induces the defrauded party to enter into a contract to their detriment, it is sometimes labeled "fraud in the inducement." *See, e.g., Isaac v. Alabanza Corp.*, 2007-Ohio-1396, ¶ 20 (7th Dist.); *Info Leasing Corp. v. Chambers*, 2003-Ohio-2670, ¶ 84 (1st Dist.).

17

**{¶42}** In this case, Appellants' allegations stated a claim for promissory fraud that induced the formation of a contract. The complaint specifically alleged that, at the time Appellees promised to use the retainer funds to pay for accounting services, Appellees knew they "would convert these funds for their own purposes." In other words, Appellants alleged that Appellees had promised that SRC would provide services in exchange for money to convince Appellants to contract with SRC—all the while knowing and intending that SRC would never supply Appellants with those services. Whether characterized as "promissory" or "in the inducement," this constitutes fraud.

### 2. *Preclusive Effect of Contract*

**{¶43}** Appellees further argue that Appellants' fraud claim must fail because Appellants cannot recover tort damages for breach of a duty created by contract. *See Evans Landscaping, Inc. v. Stenger*, 2011-Ohio-6033, ¶ 16 (1st Dist.) ("In general, where a contract action exists against a breaching party, a tort claim based upon the same underlying actions cannot coexist with the contract action, unless the breaching party also breached a duty owed independent of the contract."). But this general rule, which is an accurate statement of Ohio law, does not apply here.

**{¶44}** A plaintiff may generally recover in tort when a defendant has breached a legal duty and thereby caused plaintiff injury. However, where a legal duty owes its existence to the parties' contract, recovery will ordinarily be governed by the terms of that contract, rather than by the rules of tort law. Thus, to determine whether a contract preempts a tort claim, we ask not only (1) whether the defendant owed a legal duty to the plaintiff, but also (2) whether that duty was created or governed by the terms of a valid contract.

**{¶45}** Under their fraud claim, Appellants alleged that Appellees breached

their duty not to make knowing misrepresentations to induce Appellants' detrimental reliance. This duty not to defraud was independent of any contractual duty for two discreet reasons. *First*, as we have already explained, the contract imposed *no* duties upon Appellees, because Appellees were not parties. Thus, any duty they had must have been independent of the contract. *Second*, regardless of Appellees' status as nonparties, the duty at issue here—i.e., the duty not to fraudulently induce others to contract—necessarily existed *prior to the contract's formation*. The common law imposed this duty upon SRC, appellants, and everyone—and it did so antecedent to and regardless of any contractual terms.

**{¶46}** We therefore hold that the existence of the contract did not preclude Appellants' claim against Appellees for promissory fraud. According to the complaint, Appellees fraudulently induced Appellants to enter into a contract with SRC and furnish the retainer. These actions breached a common-law duty independent of any obligation imposed by contract, and so could provide a basis for tort liability, notwithstanding the contract's existence.

*     *     *

**{¶47}** In sum, Appellants alleged that Appellees falsely represented that they intended to perform (or to have SRC perform) under the contract, which reasonably induced Appellants to tender and lose their $5,000 retainer. Because Appellees' alleged misrepresentation concerned a then-current fact (Appellees' state of mind), their actions amounted to a breach of the common-law duty not to engage in promissory fraud, which existed independently of any duty created by Appellants' contract with SRC. Appellants therefore stated a viable fraud claim against Appellees, and the trial court erred by dismissing it.

### D. Civil Theft

**{¶48}** Appellants next sought to recover damages for alleged violations of Ohio's theft statute. R.C. 2307.60(A)(1) creates a civil cause of action in damages for victims of criminal acts, stating, "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law." Here, the alleged "criminal act" was a violation of the theft statute, which provides, in relevant part, that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . (1) [w]ithout the consent of the owner or person authorized to give consent; (2) [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent; [or] (3) [b]y deception." R.C. 2913.02(A)(1)-(3).

**{¶49}** Under this cause of action, Appellants alleged the following:

24.    Defendants knowingly obtained or exerted control over the property of Plaintiffs with the purpose of depriving Plaintiffs of this property.

25.    Defendants acted without the consent of Plaintiffs and acted beyond the scope of the express or implied consent of the Plaintiffs and acted by deception.

26.    Plaintiffs are statutorily allowed to bring an action under R.C. 2307.60[.]

27.    Plaintiffs have suffered losses and damages as a result of the actions of the Defendants[.]

**{¶50}** These allegations, taken together with Appellants' general allegations, were facially sufficient to state a civil-theft claim against Appellees under R.C. 2307.60 and 2913.02. They alleged that Appellees "knowingly obtained" the $5,000 by means

of deception—presumably by the same misrepresentations that supported the fraud claim.

{¶51} But Appellee Reder again argues that the contract barred such a claim, this time citing to *STE Invests., L.L.C. v. Macprep, Ltd.*, 2022-Ohio-2614, ¶ 42 (6th Dist.), for the proposition that a "claim for civil theft fails as a tort where its essence is derived from contracts." In part, this argument is based on the same independent-duty rule that we have already rejected with respect to Appellants' fraud claim. *See id.*, quoting *Kott v. Gleneagles Professional Builders & Remodelers, Inc.*, 2012-Ohio-287, ¶ 15 (6th Dist.) ("'[T]he existence of a contract precludes the assertion of a tort claim based on the same conduct unless there is a duty owed separate from the contract.'"). We reject that argument here, too, for the same reasons. Appellants alleged that Appellees deceived them into forming the contract and giving over the retainer. The duty not to deceive Appellants into contracting away their retainer funds necessarily preexisted the formation of the contract. Thus, if Appellants can ultimately prove these allegations, the existence of the contract will not bar their civil-theft claim.

{¶52} Nevertheless, Reder suggests that Appellants' claim under R.C. 2307.60(A)(1) is barred as a matter of statutory interpretation. Reder points to language in *STE* suggesting that a plaintiff cannot recover for violations of the theft statute that concern contractual breaches because "R.C. 2307.60(B)(1)(a) defines a 'tort action' as 'a civil action for damages for injury, death, or loss to person or property other than a civil action for damages for a breach of contract or another agreement between persons.'" *STE* at ¶ 42.

{¶53} This argument, however, is a non sequitur. R.C. 2307.60(B)(1)(A), the provision cited by Reder and *STE*, merely provides a definition for the term "tort action." That definition is, by its own terms, limited to "division (B)" of R.C. 2307.60.

But Appellants' cause of action comes from *division (A)* of the same section, which nowhere uses the phrase "tort action." *See* R.C. 2307.60(A)(1). And although R.C. 2307.60(B)(2) and (3) create some exceptions to recovery under (A)(1) for certain types of "tort actions," none of those exceptions clearly apply here.

**{¶54}** Thus, to the extent the Sixth District used R.C. 2307.60(B)(1)(a) to erect a per se contract bar to recovery under R.C. 2307.60(A)(1), we find its reasoning unpersuasive. Neither Reder nor the *STE* decision itself offer any justification for why a definition of "tort action," applicable only to R.C. 2307.60(B), should be read to limit recovery in a "civil action" for "[a]nyone injured in person or property by a criminal act," under R.C. 2307.60(A)(1). And the sole case *STE* cites to support its rule, *Wildcat Drilling, L.L.C. v. Discovery Oil & Gas, L.L.C.*, 2018-Ohio-4015 (7th Dist.), *rev'd on other grounds*, 2020-Ohio-6821, provides no support for such an interpretation. In that case, the Seventh District rejected a civil-theft claim grounded in a contractual relationship, not because of any penumbral emanation from (B)(1)(a)'s definition of "tort action," but because it found "no evidence that a criminal act was ever proved." *Id.* at ¶ 43.

**{¶55}** We therefore hold that Appellants' complaint adequately alleged that Appellees committed theft in violation of R.C. 2913.02(A), and that Appellants were injured by that criminal act. The trial court erred in dismissing Appellants' claim for relief against Appellees under R.C. 2307.60(A)(1).

### E. Unjust Enrichment

**{¶56}** Appellants' only remaining cause of action sought restitution on a theory of unjust enrichment. "To establish unjust enrichment, a plaintiff must show that (1) a benefit was conferred by the plaintiff upon the defendant; (2) the defendant had knowledge of the benefit; and (3) the benefit was retained by the defendant in

circumstances where it would be unjust to do so without payment." *Helton v. Fifth Third Bank*, 2022-Ohio-1023, ¶ 25 (1st Dist.).

{¶57} Under this cause of action, Appellants alleged as follows:

12. Plaintiffs acted in good faith in advancing monies to Defendants.

13. Defendants have failed to perform services or to return the monies advanced by Plaintiffs.

14. Defendants have been unjustly enriched by there [sic] actions to the detriment of Plaintiffs[.]

15. Plaintiffs have suffered losses and damages as a result of the actions of the Defendants.

These allegations, taken together with the general allegations, plead the elements of an unjust-enrichment claim. Appellants allege they conferred a benefit upon Appellees, i.e., the $5,000 retainer. The general allegations suggest that Appellees, in contracting with Appellants, had full knowledge of the benefit and the reason it was conferred. Nevertheless, Appellees unjustly retained the $5,000 without any intent to have their firm, SRC, provide services.

{¶58} We note that Appellants have alleged that the money was conferred upon "Defendants," which included SRC as well as Appellees. If it is shown that the "benefit" of the retainer was conferred solely upon SRC, then the unjust-enrichment claim against Appellees will probably fail—unjust enrichment generally requires the defendant only to disgorge their unjust gains, not to make the plaintiff whole. *See Hummel v. Hummel*, 133 Ohio St. 520, 528 (1938) ("[U]njust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another."). Nevertheless, under the standards of notice-pleading, we hold that the

23

reference to "Defendants" collectively sufficiently alleged that Appellees, too, received an inequitable windfall.

**{¶59}** Appellee Reder, however, cites the rule "that an equitable action in quasi-contract for unjust enrichment will not lie when the subject matter of that claim is covered by an express contract." (Cleaned up.) *See Queen City Cleaning, LLC v. I74 Wired, LLC*, 2024-Ohio-1761, ¶ 36 (1st Dist.); *accord Gilman v. Physna, L.L.C.*, 2021-Ohio-3575, ¶ 28-29 (1st Dist.). Once again, Reder correctly identifies a general rule of Ohio law; and, once again, the rule he cites does not apply here.

**{¶60}** Unlike Appellants' fraud and civil-theft claims, which sound in tort, their unjust-enrichment claim "sounds in equity." *See Deffren v. Johnson*, 2021-Ohio-817, ¶ 10 (1st Dist.). Just as the independent-duty rule bars tort actions based on contractual obligations, equity generally bars unjust-enrichment claims based on subject-matter addressed in an express contract. *See id.*; *Gilman* at ¶ 28-29. This latter rule does not flow from the independence of legal duties (as in the tort context), however, but from the equity's limited objective of correcting those injustices which the law does not address. And this equitable rule is both broader and more flexible than the independent-duty rule in tort. Broader, because it ordinarily precludes equitable claims relating to the contract against nonparties, who have *no* duties under the contract. *See Deffren* at ¶ 10 More flexible, because it allows for equitable exceptions. *See, e.g., id.* at ¶ 11. As relevant here, for example, equity permits claims for unjust enrichment, notwithstanding the existence of a contract, where there is "evidence of fraud, illegality, or bad faith." *Weiper v. W.A. Hill & Assocs.*, 104 Ohio App.3d 250, 262 (1st Dist. 1995).

**{¶61}** Based on the allegations in Appellants' complaint, equity would allow Appellants to recover from Appellees on a theory of unjust enrichment. Ordinarily,

24

equity would hold that the contract between Appellants and SRC should govern the relation not only between those parties, but also between Appellants and Appellees— leaving Appellants to their remedies at law. But here, as we have already held, Appellants stated claims against Appellees for fraud and for violations of the criminal theft statute. Further, Appellees' acceptance of retainer monies, with the knowledge that SRC would never perform its reciprocal obligations, could constitute a form of bad faith. These allegations of fraud, illegality, and bad faith, together with the allegations that Appellees unjustly received and benefited from the retainer monies paid by Appellants, suffice to state an equitable claim for restitution in the amount Appellees were unjustly enriched. *See Cristino v. Admr.*, 2012-Ohio-4420, ¶ 24 (10th Dist.), citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55 (1989) ("The existence of an express contract precludes an unjust-enrichment claim only *in the absence of bad faith, fraud, or some other illegality.*" (Emphasis in original.)); *Weiper* at 262.

**{¶62}** Accordingly, we hold that the trial court erred in dismissing Appellants' unjust-enrichment claim.

### III. CONCLUSION

**{¶63}** For the foregoing reasons, Appellants' sole assignment of error is sustained in part and overruled in part. The allegations in Appellants' complaint did not state a claim against Appellees for breach of contract; Appellants' contract was with SRC, a limited liability company no longer party to this action, and Appellants did not plead a theory on which Appellees could be held liable for SRC's debts. However, the complaint *did* adequately allege that Appellees were liable for fraud, civil theft, and unjust enrichment. Appellants' allegations in support of these three claims, all of which require proof of more than a mere breach of contract, were sufficient to

survive a motion to dismiss under Civ.R. 12(B)(6).

**{¶64}** Accordingly, we affirm the trial court's judgment to the extent it dismissed Appellants' breach-of-contract claim against Appellees, reverse that judgment to the extent it dismissed Appellants' other three claims, and remand the cause for further proceedings consistent with the law and this opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

**ZAYAS, P.J.,** and **MOORE, J.,** concur.