[Cite as *Ungerbuehler v. Kelly*, 2026-Ohio-436.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| KAYLA UNGERBUEHLER, | : | APPEAL NO. C-250201 |
| | | TRIAL NO. A-2401669 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| JAMES KELLY, | : | |
| and | : | |
| KRISTEN KELLY, | : | |
| Defendants-Appellees. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is reversed and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 2/11/2026 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *Ungerbuehler v. Kelly*, 2026-Ohio-436.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| KAYLA UNGERBUEHLER, | : | APPEAL NO. | C-250201 |
| | | TRIAL NO. | A-2401669 |
| Plaintiff-Appellant, | : | | |
| vs. | : | | |
| JAMES KELLY, | : | *O P I N I O N* | |
| and | : | | |
| KRISTEN KELLY, | : | | |
| Defendants-Appellees. | : | | |


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: February 11, 2026


*Willis Spanger Starling* and *Jason E. Starling*, for Plaintiff-Appellant,

*Taft Stettinius & Hollister LLP*, *George B. Musekamp* and *Trevor M. Nichols,* for Defendants-Appellees.

**BOCK, Presiding Judge.**

**{¶1}** Plaintiff-appellant Kayla Ungerbuehler appeals the trial court's judgment, which dismissed her complaint against her former employers, defendants-appellees James and Kristen Kelly (collectively the "Kellys"), under Civ.R. 12(C). Ungerbuehler's complaint asserted a statutory workers' compensation retaliation claim and common-law wrongful-discharge claims based on workers' compensation retaliation and disability discrimination.

**{¶2}** Ungerbuehler's first three assignments of error argue that the trial court misconstrued Ohio's public policy against employment discrimination, the elements of a workers' compensation claim, and Ohio's public policy against workers' compensation retaliation. In her fourth assignment of error, she argues that the trial court should have granted her request to amend her pleadings to cure deficiencies.

**{¶3}** We sustain Ungerbuehler's first three assignments of error and reverse the trial court's judgment dismissing Ungerbuehler's complaint, rendering her fourth assignment of error moot.

## I.  *Factual and Procedural History*

### A.  *The Kellys fired Ungerbuehler after she was injured*

**{¶4}** Because Civ.R. 12(C) requires us to accept the facts contained in Ungerbuehler's complaint as true, these facts are derived solely from the complaint.

**{¶5}** The Kellys employed Ungerbuehler as a nanny from March 2022 to October 2023. In February 2023, she was injured in a car crash "while traveling to her work location." As a result, Ungerbuehler's ability to walk and bend were "substantially limited." She informed the Kellys that she would require "multiple surgeries." Within 90 days of her injury, Ungerbuehler provided the Kellys a written notification of her intent to pursue a workers' compensation claim under R.C. 4123.90.

**{¶6}** On October 15, 2023, three significant conversations occurred. First, Ungerbuehler informed the Kellys she needed another surgery. Second, the Kellys asked Ungerbuehler to travel with them out of state. In response, Ungerbuehler told the Kellys "that she needed an accommodation of not traveling." And third, the Kellys informed Ungerbuehler that they were reducing her hours.

**{¶7}** Two days later, the Kellys fired Ungerbuehler.

**{¶8}** Ungerbuehler sued the Kellys for wrongful discharge in violation of Ohio's public policy against disability discrimination, workers' compensation retaliation in violation of R.C. 4123.90, and wrongful discharge in violation of public policy against retaliation for a workers' compensation claim. She alleged that the Kellys had "received written notification of Plaintiff's intent to pursue a claim under R.C. 4123.90," Ohio's workers compensation statute, and then "terminated Plaintiff's employment because Plaintiff engaged in a protected activity." She further alleged that the Kellys threatened to challenge her "workers' compensation claim, [which] would dissuade a reasonable person from engaging in [sic] protected activity."

### B. *The Kellys' answer*

**{¶9}** In their answer, the Kellys admitted that Ungerbuehler was their employee and that they received notice of her injuries. But they denied that Ungerbuehler's surgeries were "required because of her alleged injuries." They also alleged that Ungerbuehler, rather than traveling with the Kellys out of state, "attended a Cincinnati Bengals game which was the real reason [Ungerbuehler] refused to perform her required job duties." And they asserted that Ungerbuehler crashed the Kellys' "vehicle following a Cincinnati Bengals game and did not immediately report the crash to Defendants or authorities."

**{¶10}** The Kellys raised a host of defenses to Ungerbuehler's claims, specifically that Ungerbuehler is "not a covered 'employee' under the relevant statutes and [the Kellys] are not 'employers' under the relevant statutes."

## C. *Judgment on the pleadings*

**{¶11}** The Kellys moved for a judgment on the pleadings under Civ.R. 12(C). They argued that Ungerbuehler's allegations did not meet certain threshold requirements under Ohio's civil-rights statute. They claimed Ungerbuehler did "not allege[] that the Kellys had any other employees" and so the Kellys could not be considered statutory employers. They also claimed that nannies are not "employees" as defined by R.C. 4112.01, so Ungerbuehler was excluded from protections under Ohio's civil-rights statute. Plus, they insisted that Ungerbuehler could not assert a viable workers' compensation retaliation claim because she did not pursue a viable workers' compensation claim before she was fired.

**{¶12}** In response, Ungerbuehler disputed the Kellys' legal arguments and, alternatively, asked for "leave to amend to plead additional facts if, for any reason, the Court finds the current facts are insufficiently specific."

**{¶13}** The trial court granted the Kellys' judgment on the pleadings and dismissed Ungerbuehler's complaint with prejudice. It dismissed Ungerbuehler's employment-discrimination claim because she failed to "properly identify that [the Kellys] do not meet the definition of an 'employer.'" It dismissed Ungerbuehler's workers' compensation retaliation claims because Ungerbuehler was injured while traveling to and from work, making her ineligible for workers' compensation.

**{¶14}** The trial court denied Ungerbuehler leave to amend because the facts alleged by Ungerbuehler "support the conclusion that there is no viable claim" and amending the complaint "would be futile."

*II. Analysis*

{¶15} On appeal, Ungerbuehler raises four assignments of error. First, she argues that the trial court erred by dismissing her common-law employment-discrimination claim and denying her leave to amend her complaint. In her second and third assignments of error, she asserts that the trial court improperly considered whether Ungerbuehler's workers' compensation claim was viable when it dismissed her common-law and statutory workers' compensation retaliation claims. Finally, she maintains that the trial court should have granted her leave to amend her complaint.

## A. <u>Dismissal under Civ.R. 12(C)</u>

{¶16} After the pleadings are closed, a party may move for a judgment on the pleadings under Civ.R. 12(C) and request that the trial court dismiss the complaint "for failing to state a claim upon which relief may be granted." *See* Civ.R. 12(H)(2). A motion for a judgment on the pleadings tests the sufficiency of the allegations in the complaint. *Hill v. Schildmeyer,* 2024-Ohio-3261, ¶ 1 (1st Dist.).

{¶17} The sufficiency of a complaint's allegations is "measured against Civ.R. 8(A)." *Vandemark v. Reder,* 2026-Ohio-50, ¶ 10 (1st Dist.). In Ohio, "any pleading that sets forth a claim for relief [must] 'contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled.'" *Id.,* quoting Civ.R. 8(A). In turn, Civ.R. 8(E)(1) eschews technical pleading requirements and dictates that the allegations in a complaint "shall be simple, concise, and direct."

{¶18} In other words, "Ohio is a notice-pleading state." *Maternal Grandmother, ADMR v. Hamilton Cty. Dept. of Job and Family Servs.*, 2021-Ohio-4096, ¶ 7. Notice pleading demands simple statements of claims and the relief sought so that the adverse party has fair notice of the claims and the opportunity to prepare a

response. *Wells Fargo Bank, N.A. v. Horn*, 2015-Ohio-1484, ¶ 13, quoting *Anderson v. BancOhio Natl. Bank*, 1985 Ohio App. LEXIS 9437, *1 (1st Dist. Nov. 27, 1985), quoting *Fancher v. Fancher*, 8 Ohio App.3d 79, 83 (1st Dist. 1982).

**{¶19}** Plaintiffs need not prove their cases in their complaints. *Reder* at ¶ 10, quoting *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144 (1991). Nor must they "'state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided.'" *Ri'Chard v. Bank of Am.*, 2020-Ohio-4688, ¶ 8 (1st Dist.), quoting *Fancher* at 83.

**{¶20}** We are tasked with reviewing whether the trial court properly dismissed Ungerbuehler's complaint under Civ.R. 12(C) for failing to state a claim upon which relief may be granted. So, we must (1) accept her complaint's material allegations, plus reasonable inferences drawn from her allegations, as true; and (2) determine whether it is beyond doubt that Ungerbuehler could not prove any set of facts that would support her claims and entitle her to relief. *See State ex rel. Midwest Pride IV v. Pontious*, 1996-Ohio-459, ¶ 21.

## B. *The trial court erroneously dismissed Ungerbuehler's unlawful-discharge claim based on public policy reflected in R.C. Ch. 4112*

**{¶21}** Ungerbuehler's first assignment of error challenges the trial court's dismissing Count 1 of her complaint, which alleged that the Kellys wrongfully discharged her in violation of R.C. Ch. 4112's public policy against disability discrimination.

### 1. *Common-law claims for wrongful discharge in violation of public policy*

**{¶22}** Ungerbuehler was an at-will employee. Generally, at-will employees may be fired "for any cause, no cause, or even in gross or reckless disregard of an employee's rights." *Collins v. Rizkana,* 1995-Ohio-135, ¶ 13. But at-will employment

7

"was judicially created, and it may be judicially abolished." *Kulch v. Structural Fibers*, 1997-Ohio-219, ¶ 61. For more than a quarter of a century, Ohio courts have recognized a public-policy exception to the at-will employment doctrine. *See Greeley v. Miami Valley Maintenance Contrs.*, 49 Ohio St.3d 228, 233-234 (1990).

**{¶23}** In *Greeley,* the Supreme Court of Ohio held that employers no longer had the right to fire at-will employees for "any cause" and employers are prohibited from discharging at-will employees "where the discharge is in violation of a statute and thereby contravenes public policy." *Id.*, at paragraph two of the syllabus.

**{¶24}** Employees bringing a common-law tort claim for wrongful discharge— a "*Greeley* claim"—must prove (1) a clear public policy exists, (2) the employee's dismissal "jeopardize[d] the public policy," (3) the employer's dismissal decision was based on employee conduct involving the public policy, and (4) no overriding business interest justified the dismissal. *Losch & Assocs. v. Polonczyk*, 2016-Ohio-4950, ¶ 13 (1st Dist.). The first two elements of a *Greeley* claim—known as the "clarity" and "jeopardy" elements—are "'relatively pure law and policy questions.'" *Collins* at ¶ 20, quoting Perritt, *The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie?*, 58 U.Cin.L.Rev. 397, 398-399 (1989). The causation and overriding-justification elements are questions of fact for the jury. *Id.*, quoting Perritt at 401.

**{¶25}** The trial court dismissed Ungerbuehler's *Greeley* claim because it determined that she had failed to meet the clarity element. The parties dispute that finding on appeal. Consistent with the arguments, we limit our analysis of Ungerbuehler's *Greeley* claim to the clarity element.

a. <u>Clarity element</u>

**{¶26}** A plaintiff raising a *Greeley* claim bears the burden of "articulat[ing] a clear public policy by citation to specific provisions in the federal or state constitution,

federal or state statutes, administrative rules and regulations, or common law." *Dohme v. Eurand Am., Inc.*, 2011-Ohio-4609, ¶ 24. "Clear public policy" justifying exceptions to the employment-at-will doctrine "is not limited to public policy expressed by the General Assembly in the form of statutory enactments." *Painter v. Graley*, 70 Ohio St.3d 377, 383-384 (1994). The *Painter* Court recognized that when common law is "out of step with the times" and the legislature has not acted, "we have undertaken to change the law, and rightfully so. After all, who presides over the common law but the courts?" *Id.*, quoting *Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St.3d 244, 253 (1993). The *Painter* Court reaffirmed *Greeley* and held that employment-at-will exceptions are justified when an employer's termination of an employee contravenes "sufficiently clear public policy." *Id.*

{¶27} Although plaintiffs are not confined to asserting public-policy violations by citing a specific statute, courts recognize employment-at-will exceptions "'only where the public policy alleged to have been violated is of equally serious import as the violation of a statute.'" *White v. Sears, Roebuck & Co.*, 2005-Ohio-5086, ¶ 13 (10th Dist.), quoting *Painter* at 384, quoting *Greeley*, 49 Ohio St.3d at 234.

b. R.C. Ch. 4112's public policy

{¶28} Ungerbuehler cited to R.C. Ch. 4112 as a clear public policy against employment discrimination based on a person's disability. So, we must look to the statute's text, its purpose, and the "General Assembly's intention in enacting it." *Sutton v. Tomco Machining, Inc,* 2011-Ohio-2723, ¶ 11.

{¶29} R.C. 4112.02(A) makes it unlawful for "[a]ny employer, because of the . . . disability . . . of any person, to discharge without cause . . . or otherwise to discriminate against that person with respect to . . . any matter directly or indirectly related to employment."

**{¶30}**  The Supreme Court of Ohio has long recognized that R.C. 4112.02(A) prohibits "[d]iscrimination on the basis of [a disability]." *Greeley*, 49 Ohio St.3d at 234, citing *Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St.3d 279, 280 (1986); *see Dworning v. City of Euclid*, 2008-Ohio-3318, ¶ 27 ("R.C. Chapter 4112 is remedial legislation designed to prevent and eliminate discrimination."); *see also Helmick v. Cincinnati Word Processing*, 45 Ohio St.3d 131, 135 (1989) ("While discretionary hiring practices, discriminatory promotions and discriminatory discharges are not actionable at common law absent an express contract, the express purpose of R.C. Chapter 4112 is to deter these practices and provide a remedy where none existed under state law."). Likewise, we have explained that "Ohio public policy clearly prohibits discrimination against disabled individuals." *Pflanz v. City of Cincinnati*, 2002-Ohio-5492, ¶ 66 (1st Dist.); *see Caplinger v. Uranium Disposition Servs., LLC*, 2009 U.S. Dist. LEXIS 9950, *16 (S.D.Ohio Feb. 11, 2009) ("There is a clear public policy against disability discrimination in Ohio.").

2. *R.C. 4112.01(A)'s definitions do not prohibit common-law wrongful-discharge claims by domestic employees against small employers*

**{¶31}**  The Kellys frame the public-policy inquiry into R.C. Ch. 4112, under the clarity element, in narrow and specific terms. They view the public policy expressed in R.C. Ch. 4112 as only prohibiting statutory employers from discriminating against statutory employees based on a disability. Ungerbuehler urges us to view the inquiry into R.C. Ch. 4112's public policy more broadly and asserts that Ohio's policy prohibiting employment discrimination is inclusive of all employers and employees.

a. R.C. 4112.01(A)(2)'s definition of "employer" does not form part of Ohio's public policy against employment discrimination based on a disability

**{¶32}**  The trial court dismissed Ungerbuehler's common-law disability-discrimination claim and found that R.C. Ch. 4112's public policy failed under

*Greeley*'s clarity requirement because the Kellys "do not meet the definition of an 'employer'" under R.C. 4112.01(A)(2).

**{¶33}** Properly understood, the trial court's entry raises the issue at the heart of the parties' dispute: whether the public policy against employment discrimination on the basis of a disability reflected in R.C. Ch. 4112 is bound by the law's definitional section, which limits an "employer" to "the state, any political subdivision of the state, or a person employing four or more persons within the state, and any agent of the state, political subdivision, or person." R.C. 4112.01(A)(2).

**{¶34}** We disagree with the trial court and the Kellys. Supreme Court of Ohio precedent convinces us that R.C. Ch. 4112's public policy applies beyond R.C. 4112.01(A)(2)'s definition of "employer."

**{¶35}** In *Collins v. Rizkana,* the Supreme Court of Ohio considered whether the Ohio legislature's enactment of Ohio's criminal sexual-imposition statute and R.C. 4112.02(A) expressed a "clear public policy against workplace sexual harassment . . . to justify an exception to the employment-at-will doctrine." *Collins,* 1995-Ohio-135, at ¶ 29. Like the Kellys, the *Collins* employer employed fewer than four people. *Id.* at ¶ 34. Relevant here, the Court explained that R.C. 4112.01(A)(2)'s definition of an "employer" was "an intention to exempt small businesses from the burdens of R.C. Chapter 4112, *not from its antidiscrimination policy*." (Emphasis added.) *Id.* at ¶ 34. The Court refused to "interpret R.C. 4112.01(A)(2) as an intent by the General Assembly to grant small businesses in Ohio a license to sexually harass/discriminate against their employees with impunity." *Id.* at ¶ 35.

**{¶36}** Moreover, the Court reaffirmed the principle that "'common-law tort actions are not preempted by R.C. Chapter 4112.'"[1] *Id.* at ¶ 32, quoting *Helmick* at 135. Citing the absence of any intent to preempt common-law remedies, the Court "perceive[d] no basis upon which to find that R.C. 4112.01(A)(2) forms part of the public policy reflected in R.C. 4112.02(A)." *Id.* at ¶ 35.

**{¶37}** The Kellys rely on the Supreme Court of Ohio's opinion in *Miracle v. Ohio Dept. of Veterans Servs.*, 2019-Ohio-3308, to argue that "an employee, like Ungerbuehler, cannot assert a claim for wrongful termination in violation of public policy where the employee does not meet the threshold requirements for protection under the statute." The *Miracle* Court considered whether R.C. 124.27(B) expressed a clear public policy against terminating probationary civil-service employees for reasons other than their performance. *Id.* at ¶ 15. It held that R.C. 124.27(B) did not express a clear public policy upon which a probationary civil-service employee could base a *Greeley* claim because the statutory text afforded lesser protections and rights to probationary employees than tenured employees, and because the statute's evolution reveals an "expan[sion of] the removal authority of employers while reducing the procedural protections guaranteed to probationary employees." *Id.*

**{¶38}** In 2021, the General Assembly amended R.C. 4112.08(B), which currently reads, "The procedures and remedies for unlawful discriminatory practices

---

[1] The Supreme Court of Ohio considered the import of R.C. 4112.01(A)(2)'s "employer" definition in its analysis of the jeopardy element of the plaintiff's *Greeley* claim. *See Collins,* 1995-Ohio-135, at ¶ 29. When the right and remedy are part of the same statute and the statute serves as the sole source of a public policy opposing wrongful discharge, the jeopardy element turns on "whether the remedy provisions adequately protect society's interest by discouraging the wrongful conduct." *Sutton v. Tomco Machining, Inc.*, 2011-Ohio-2723, ¶ 25. Because the jeopardy element is not before this court, we do not consider whether Ungerbuehler's dismissal could jeopardize Ohio's public policy against employment discrimination based on a person's disability. *See State v. Williamson,* 2022-Ohio-185 ¶ 31 (9th Dist.) ("This Court acts as a reviewing court and will not usurp the role of the trial court by deciding new issues at the appellate level.").

relating to employment in this chapter are the sole and exclusive procedures and remedies available to a person who alleges such discrimination actionable under this chapter." The 2021 Staff Notes clarify that, by amending the statute, "the General Assembly declares its intent . . . to conform to, and not to overturn, the holding of the Ohio Supreme Court in *Collins v. Rizkana*, 73 Ohio St.3d 65, 73 (1995)."

**{¶39}** Unlike the legislative history in *Miracle*, where statutory amendments reduced probationary-employees' protections and expanded the right to terminate probationary employees, the 2021 amendment to R.C. 4112.08—which is part of R.C. Ch. 4112's statutory evolution—endorsed *Collins*'s holding.

**{¶40}** Therefore, we hold that R.C. Ch. 4112 reflects a public policy against employment discrimination on the basis of a person's disability sufficient to justify an exception to at-will employment under the common law. Moreover, the legislature has not expressed any intent to preempt *Greeley* claims based on an employee's disability, so we "perceive no basis upon which to find that R.C. 4112.01(A)(2) forms part of the public policy reflected in R.C. 4112.02(A)." *See Collins,* 1995-Ohio-135, at ¶ 35. Accordingly, we hold that a plaintiff alleging employment discrimination based on the plaintiff's disability may bring a *Greeley* claim against an employer who employs less than three employees.

b. R.C. 4112.01(A)(3)'s definition of "employee" does not bar in-home service
   providers from bringing *Greeley* claims

**{¶41}** The Kellys argue that this court should affirm the trial court's dismissal of Ungerbuehler's disability-discrimination claim because Ungerbuehler is not an employee under R.C. 4112.01(A)(3) and therefore is excluded from the statute's protection against disability discrimination.

13

**{¶42}** Recall that R.C. 4112.02(A) prohibits an employer from discriminating against "any person" based on "that person['s]" disability. Relevant here, R.C. 4112.01(A)(1) provides that "person," as used in R.C. Ch. 4112, "includes, but is not limited to, any owner, lessor, assignor, builder, manager, broker, salesperson, appraiser, agent, employee, lending institution, and the state and all political subdivisions, authorities, agencies, boards, and commissions of the state." And "employee" is statutorily defined as "an individual employed by any employer but does not include any individual employed in the domestic service of any person." R.C. 4112.01(A)(3).

**{¶43}** Under the statute, employees providing domestic services to an employer would be barred from bringing statutory employment-discrimination claims based on a disability. But as *Collins* explained, the antidiscrimination policy reflected by R.C. 4112.02(A) is distinct from the policy reflected by R.C. 4112.01's narrow definition of "employers." *See Collins,* 1995-Ohio-135, at ¶ 34. The *Collins* Court explained that R.C. Ch. 4112's definitional section reflects a legislative intent to alleviate R.C. Ch. 4112's administrative burdens for small businesses. *Id*. Still more, the *Collins* Court refused to interpret R.C 4112.01 as the legislature "grant[ing] small businesses in Ohio a license to . . . discriminate against their employees." *Id*.

**{¶44}** We discern no reason why *Collins*'s reasoning would not apply to the statutory definition of an employee. The statutory definition of employers and employees serve an administrative function and reflect practical concerns independent from R.C Ch. 4112's substantive prohibition of discrimination. As the *Helmick* Court explained, the common law serves to "supplement the limited protection and coverage of [R.C. Ch. 4112]." *Helmick*, 45 Ohio St.3d at 131. Therefore,

we hold that R.C. 4112.01(A)(3) does not prohibit individuals employed as domestic servants from bringing *Greeley* claims.

**{¶45}** The Kellys also argue that allowing Ungerbuehler to move forward with her *Greeley* claim would infringe on their fundamental rights as parents. The Kellys are correct that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). But they fail to identify the test for analyzing due-process claims and fail to present a proper due-process argument. As a court of appeals, we may not create an argument where a party fails to develop one. *See Vorhees v. Anderson Twp. Bd. of Zoning Appeals*, 2024-Ohio-4459, ¶ 50 (1st Dist.).

**{¶46}** The trial court erroneously dismissed Ungerbuehler's *Greeley* claim based on alleged disability discrimination because R.C. Ch. 4112 reflects a public policy that employees should not be fired for having a disability and requesting an accommodation, regardless of employer size or the nature of the employee's work. Therefore, we sustain the first assignment of error.

## C. *Ungerbuehler's complaint sufficiently pleaded workers' compensation retaliation claims*

**{¶47}** In her second and third assignments of error, Ungerbuehler argues that the trial court erred when it granted the Kellys judgment on the pleadings on her statutory claim in Count 2, and common-law claim in Count 3, for workers' compensation retaliation.

1. *Statutory claims for workers' compensation retaliation*

    a. <u>Workers' compensation claims in Ohio under R.C. Ch. 4123</u>

**{¶48}** Ohio's Workers' Compensation Act "provides that every employee who is injured in the course of and arising out of employment may be entitled to receive compensation for such injury." *Hardy v. P&G Co.*, 2011-Ohio-5384, ¶ 10 (1st Dist.). The Act is "founded on a recognition that unintentional injury is a reality in the workplace and is designed to balance the interests of employers and employees when unintentional injury occurs." *Onderko v. Sierra Lobo, Inc.*, 2016-Ohio-5027, ¶ 25; *see Indus. Comm. of Ohio v. Gintert*, 128 Ohio St. 129, 131 (1934) ("Its purpose is to require as a matter of justice that injuries to workmen sustained in the course of their employment, not caused by their own wilful [sic] act, shall be regarded as a charge upon the business in which they were engaged, and compensation made therefor."). The Act also incentivizes employers to "ensure safe workplaces, in part because if an employee is injured at their place of work, the employer bears the cost." *Rajeh v. Steel City Corp.*, 2004-Ohio-3211, ¶ 37 (7th Dist.).

**{¶49}** Workers' compensation benefits are available when (1) an employee is injured in the course of employment, and (2) the injury is caused by that employment. *Parrish v. Cavaliers Holding*, 2019-Ohio-89, ¶ 10 (8th Dist.), quoting *Ruckman v. Cubby Drilling, Inc.*, 1998-Ohio-455, ¶ 7 (1998). For workers' compensation claims, an "injury" is "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). The injury must occur "in the course of" and must "aris[e] out of" the employment, meaning there must be a causal connection between the employment and the injury. *See Parrish* at ¶ 11.

**{¶50}** Generally, workers' compensation benefits are not available for employees who work in a fixed location and are injured traveling to or from work. *Id.*, quoting *MTD Prods., Inc. v. Robatin*, 61 Ohio St.3d 66, 68 (1991). This rule, known as the "coming-and-going-rule," helps "'determine whether an injury suffered by an employee in a traffic accident occurs "in the course of" and "arises out of" the employment relationship.'" *Id.*, quoting *Ruckman* at ¶ 7.

b. Workers' compensation retaliation under R.C. 4123.90

**{¶51}** To safeguard workers' rights to workers' compensation benefits, R.C. 4123.90 provides that an employer may not "discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings" related to a workplace injury or disease. The Act's antiretaliation provision "enable[s] employees to freely exercise their rights without fear of retribution from their employers." *Onderko*, 2016-Ohio-5027, at ¶ 35.

**{¶52}** In *Onderko,* the Supreme Court of Ohio held that a workers' compensation retaliation claim requires proof that the employer took punitive action against the employee as retaliation for the employee's exercising rights under the Workers' Compensation Act, including filing a claim or instituting, pursuing, or testifying in any workers' compensation proceedings. *Id.* at ¶ 40. The *Onderko* Court unequivocally rejected the notion that "[p]roof of injury at work" is an element of a workers' compensation retaliation claim under R.C. 4123.90. *Id.* at ¶ 36. Indeed, the antiretaliation protection "hinges on the employer's response to the plaintiff's pursuit of benefits, not the award of benefits." *Id.* at ¶ 37.

**{¶53}** Here, the trial court relied on the "coming-and-going" rule when it dismissed Ungerbuehler's retaliatory-discharge claims. It ruled that Ungerbuehler did

not have a viable workers' compensation claim, and therefore, Ungerbuehler could not raise workers' compensation retaliation claims.

**{¶54}** Under *Onderko*, the trial court improperly dismissed these claims. The *Onderko* Court explained that requiring an employee to have a viable workers' compensation claim to bring a retaliation claim "ignores the language of the statute as well as its import." *Onderko*, 2016-Ohio-5027, at ¶ 37. Rather than focusing on whether an employee's injury was workplace related, the relevant inquiry for a worker's compensation retaliation claim is simply "whether a claim was pursued and whether the employee was fired or otherwise punished for doing so." *Id.*

**{¶55}** Turning to Ungerbuehler's complaint, she alleged that the Kellys threatened to challenge Ungerbuehler's workers' compensation claim, which she alleged "would dissuade a reasonable person from engaging in protected activity." She also alleged that after she gave the Kellys notice of her intent to pursue a claim under R.C. 4123.90, they ended her "employment in retaliation for reporting a work injury and/or filing for workers' compensation." Viewing these allegations and all reasonable inferences in Ungerbuehler's favor, as we must, we hold that Ungerbuehler alleged a set of facts that would entitle her to relief. The trial court erred when it dismissed her workers' compensation retaliation claim under R.C. 4123.90.

**{¶56}** We sustain the second assignment of error.

2. *Workers' compensation retaliation in violation of public policy*

**{¶57}** Ungerbuehler also alleged, in the alternative, that the Kellys wrongfully terminated Ungerbuehler in violation of the public policy reflected in R.C. 4123.90 against firing an employee before they can file, institute, or pursue a workers' compensation retaliation claim. The trial court granted judgment on the pleadings because Ungerbuehler "was not eligible for Worker's Compensation," her termination

did not violate R.C. 4123.90's public policy, and she "never pursued workers' compensation benefits prior to her termination."

{¶58} In *Sutton v. Tomco Machining, Inc.,* the Supreme Court of Ohio recognized a common-law tort for wrongful discharge in violation of public policy when a claim is based on an employer subjecting an employee to retaliatory employment action after an employee is injured on the job but before the employee engaged in protected workers' compensation activity. *Sutton*, 2011-Ohio-2723, at ¶ 1. The *Sutton* Court pointed out that R.C. 4123.90 contains a gap in protection in the time between a workplace injury and an employee filing, instituting, or pursuing a claim. *Id.* at ¶ 14. It reasoned that "the General Assembly did not intend to leave a gap in protection during which time employers are permitted to retaliate against employees who might pursue workers' compensation benefits." *Id.* at ¶ 22. The *Sutton* Court concluded that "R.C. 4123.90 expresses a clear public policy prohibiting retaliatory employment action against injured employees, including injured employees who have not filed, instituted, or pursued a workers' compensation claim."

{¶59} Courts have construed *Sutton* to allow *Greeley* claims if a plaintiff establishes "that [s]he was terminated in order to prevent h[er] from filing a workers['] compensation claim." *Rowe v. Hoist & Crane Serv. Group*, 2022-Ohio-3130, ¶ 40 (8th Dist.). Under *Sutton,* a *Greeley* claim for workers' compensation retaliation may be brought by "''employees who might pursue workers' compensation benefits" against their employer in the future.'" *Id.*, quoting *McGree v. Gateway Healthcare Centre, L.L.C.*, 2019-Ohio-988, ¶ 12 (8th Dist.), quoting *Sutton* at ¶ 22.

{¶60} The Kellys argue that Ungerbuehler's allegations do not set forth a viable claim for workers' compensation retaliation in violation of public policy because Ungerbuehler lacked a viable workers' compensation claim. They assert that

Ungerbuehler's injury occurred outside of her employment and she failed to pursue a workers' compensation claim within months of her injury.

{¶61} To be sure, *Sutton* held that R.C. 4123.90 "expresses a clear public policy prohibiting retaliatory employment action against injured employees, including injured employees who have not filed, instituted, or pursued a workers' compensation claim." *Sutton*, 2011-Ohio-2723, at ¶ 22. But *Sutton* predates *Onderko,* where the Court clarified that R.C. 4123.90 does not require a workplace injury to allege workers' compensation retaliation. *Onderko,* 2016-Ohio-5027, at ¶ 36. In fact, the *Onderko* Court cited *Sutton* for the principle that Ohio "recogniz[es] a common-law action for wrongful discharge in violation of public policy based on R.C. 4123.90's expression of 'a clear public policy prohibiting retaliatory employment action against injured employees.'" *Id.* at ¶ 35, quoting *Sutton* at ¶ 22.

{¶62} Ungerbuehler's allegations sufficiently allege the Kellys fired her to prevent her from filing a workers' compensation claim. She alleged she gave notice to the Kellys of her intent to file a worker's compensation claim and that they fired her "because they anticipated that she would imminently file for workers' compensation." These allegations, if true, would violate the public policy manifested in R.C. 4123.90 under *Sutton* and *Onderko.*

{¶63} We sustain the third assignment of error. Our resolution of the first three assignments of error renders Ungerbuehler's fourth assignment of error moot.

### III. Conclusion

{¶64} In conclusion, we sustain Ungerbuehler's first three assignments of error and reverse the trial court's dismissal of Ungerbuehler's complaint. We remand the cause to the trial court for further proceedings. Ungerbuehler's fourth assignment of error is moot and we do not address it.

Judgment reversed and cause remanded.

**NESTOR** and **MOORE, JJ.,** concur.